[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application by the plaintiff Genenral Motors Corporation to vacate an arbitration award finding that the defendants are entitled to relief under Conn. Gen. Stat. Sec. 42-181et seq., the Lemon Law. The defendant consumers Steven and Ligia Blanchard, joined by the Connecticut Department of Consumer Protection who is represented by the Connecticut Attorney General, oppose the application.
On August 24, 1996, the defendants purchased a new 1996 Chevrolet Geo Tracker from Harte Chevrolet in Meriden, Connecticut, an authorized Chevrolet Geo dealer. When they first examined the auto, it did not have an air conditioner. The sales representative and the sales manager told them that the dealership would see to it that an air conditioner was installed. They agreed upon a price. The retail purchase order lists a single sales price of $16,365, and under "extra or optional equipment" the handwritten words "including A/C instal*." Sales tax and transfer fees less a trade-in allowance made the entire delivery price $17,437.84.
When the defendants took delivery and paid for the auto, the A/C had been installed. Upon taking delivery, the defendants CT Page 6671 immediately noticed rattling and vibration problems that were traced to the A/C unit. After a number of unsuccessful attempts at GM dealerships to correct those problems along with attempts to correct the faulty operation of the A/C, the defendants applied for relief to the Automobile Dispute Settlement Program administered by the Connecticut Department of Consumer Protection. Conn. Gen. Stat. Sec. 42-181.
The arbitration took place on September 29, 1997. The arbitrators determined that there had been four unsuccessful repair attempts without correcting the problem; that the defective A/C substantially impaired the use, value or safety of the vehicle, given that it would be used to transport an infant during the summertime (one arbitrator dissenting); and that the A/C unit was covered by the warranty. The arbitrators awarded the defendants a refund of the sales price and certain other charges less a mileage adjustment, to be paid within thirty days of the award; and ordered the defendants to simultaneously surrender the vehicle.
The plaintiff GMC thereafter filed this Application to Vacate the Award, on the grounds that the arbitrators exceeded the scope of their authority in finding 1) that the vehicle was the subject of four repair attempts and 2) that the dealer-installed A/C was covered by the warranty. For reasons discussed below, the court rejects GMC's contentions and upholds the decision of the arbitrators.
SCOPE OF REVIEW
Conn. Gen. Stat. Sec. 42-181 provides that once a consumer makes application for "Lemon Law" arbitration through the Department of Consumer Protection, the arbitration IS compulsory. As such, the scope of review is not essentially different from that applied to agency decisions under the Uniform Administrative Procedures Act, Conn. Gen. Stat. Sec. 52-418. As to matters of fact, the court may not retry the case or substitute its judgment for that of the agency/arbitrator.Griffin Hospital v. Commission on Hospitals and Health Care,200 Conn. 489, 496 (1986). Rather, the court shall uphold the award "unless it determines that the factual findings of the arbitrators are not supported by substantial evidence in the record and that and that the substantial rights of the moving party have been prejudiced." Conn. Gen. Stat. Sec. 42-181 (c). CT Page 6672
THE REPAIR ATTEMPTS
The arbitrators found as a matter of fact that the defective A/C installation had been the subject of repair attempts on four occasions: September 4, 1996; September 5, 1996; October 7, 1996; and April 22, 1997. The plaintiff GMC alleges that this is not supported by substantial evidence. The record discloses that the defendants affirmed the truth of this. See Transcript of Arbitration, page 9; see also, Consumer's Request for Arbitration. Despite the fact that work orders from the Harte dealership do not show a specific investigation of the consumer's complaint about the A/C on each of those occasions, the arbitrators were entitled to believe the consumer's evidence over that of the manufacturer. The testimony and presentation of the defendants at the arbitration meets the "substantial evidence" test in this case.
THE EXPRESS WARRANTY
The arbitrators found that under agency principles the terms of the manufacturer's express warranty were extended to the dealer-installed A/C. This presents a more difficult analysis for the court.
The manufacturer's express warranty is far from a model of clarity as it regards installation by the dealer of certain optional equipment. First the 1996 General Motors Corporation New Vehicle Limited Warranty specifies that the warranty period "begins on the date the vehicle is first delivered or put in use. . . ." p. 6. Also under the heading WHAT IS COVERED, the writing specifies, "The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period."
Under the heading WHAT IS NOT COVERED, pp. 8-9, there is no reference to any exclusion for optional equipment installed by the authorized GM dealer after manufacture but before delivery to the customer.
On page 16, under the heading THINGS YOU SHOULD KNOW ABOUT THE NEW VEHICLE LIMITED WARRANTY, there appears this language:
This warranty does not cover any damage or failure resulting from modification or alteration to the vehicle's original equipment as manufactured or assembled by General Motors CT Page 6673 except for dealer installed Regular Product Option (RPO) equipment such as a Delco radio, cruise control, trailering hitch package, etc. Examples of the types of alterations that would not be covered include, but are not limited to, the installation of a GM non-RPO part or accessory, any non-GM part or accessory, or the cutting, welding, or disconnecting of the vehicle's original equipment parts and components.
The plaintiff cites this as a definite exclusion from the warranty of the after-market A/C unit installed by the dealer.
But the paragraph, read as a whole with the other relevant portions of the warranty, can more easily be understood to exclude only items that an authorized GM dealer delivering the new vehicle would not normally add prior to delivery. The most reasonable meaning of this paragraph is that whatever an authorized GM dealer installed, that appears to be within the scope of that which the dealer is authorized to add as a Regular Product Option, is covered by the warranty. The use of the terms "dealer installed" and "etc." after the list of examples leads to the interpretation that a common component such as an air conditioner which the authorized dealer tells the customer is the equivalent of a factory installed part, and which is not separately priced in the sales contract, but is installed by the dealer prior to delivery, is covered by the warranty.
This is consistent with the well-settled principle that if any ambiguity appears in the terms of a contract, the term is to be construed against the drafter. Hartford Electric Applicatorsof Thermalux, Inc. v. Alden, 169 Conn. 177, 182 (1975); Mongillov. Commissioner, 214 Conn. 225, 231 (1990).
CONCLUSION
The decision of the arbitrators is in accordance with substantial evidence in the record. The Application to Vacate Arbitration is denied.
Patty Jenkins Pittman, Judge